Next case on the calendar is Nadesan v. Citizens Financial Group. Good morning. May it please the court. William S. Palmieri for the appellant, Reverend Ron Nadesan. It's been a long-held provision of the law of our circuit and our Supreme Court that section 42 U.S.C. 1981 protects not only against race discrimination but also against discrimination based on ancestry or ethnic characteristics. And that's nearly an exact quote. The exact quote is contained in my brief from St. Francis College v. Al-Khazarji. But not discrimination on the basis of national origin. Absolutely correct, Judge Carney. Judge Livingston. Excuse me, Judge Livingston. And, Judge, in the district court, the words national origin were correctly used to describe Mr. Nadesan. But what is important in the complaint is that the invocation of the statute prohibiting race, ancestry, and ethnic discrimination was the primary means by which Mr. Nadesan was attempting to bring action against the complaint. The complaint does allege race discrimination? In one word. In one word. It appears somewhere, but putting aside the wording, does it substantively allege race discrimination? Absolutely. What is the race, the alleged race of the plaintiff? Mr. Nadesan identifies himself as, and I want to be sure I have it, Singaporean. Is that a race? The question in this case, Judge, is whether or not — Is that a race? It's an ethnicity and it's a heritage. And those are covered by 1981, by Section 1981. And my point is that the district court gave an incorrectly narrow reading of 1981 by saying — and in fact, with all due respect to Judge Shin, what you're asking, is it a race? Is it a race question? Well, 1981 is broader than that. And that's been the subject of a very recent case this year alone in our circuit, and that's the case which I also cite, Village of Freeport v. Barella, which discusses the concept of Hispanicity and persons of Hispanic origin. And I describe a number of other cases where persons who come from certain places and their ethnicity and heritage are so integrally intertwined that they earn the protection of 1981. 1981 is not a hard and fast-drawn — there's not a hard and fast-drawn line around 1981 that says race only. In fact, Barella says things like physiognomy, which are traditionally maybe scientific indicators of race, don't need to apply. What is more important, and what in fact the law says back to 1987 — The complaint repeatedly refers to Singapore nationals. It repeatedly refers to national origin. Well, Judge — It doesn't say ancestry. The complaint does in fact say — and I zip forward ahead to my section of my brief where I talk about the allegations in the complaint that meet this broadened standard of what race, ethnicity, and heritage means under 1981. And in fact, Mr. Nadasan identifies himself as Singaporean. And then he goes on to discuss his physical stature. Put aside the issue for a moment of whether it's race or whether it's national origin. Sure. What is the discrimination? The discrimination in the case is that he was told by a person of another race — and this is another point going to whether this is a 1981 case — he compares himself to persons — and I'm just going to quote from the complaint — white persons, persons of Indian origin. So there are comments, so you're arguing it's a hostile environment case? It's a 1981 discrimination case under race, ethnicity, and heritage. Alleging what discrimination? What form of discrimination? He was told, among other things, that he was a fake Indian, that he wasn't a true Indian. So comments, beyond the comments, is there anything concrete? You're not alleging he was fired? Was he denied a pay raise? What concrete acts of discrimination were there? In addition to being derided for his ethnic heritage, he was said he didn't eat true Indian food. He didn't know how to pronounce Indian names. He was a fake Indian. That was repeated a couple of times. Other persons of other races, and these are supervisory individuals, were alleged to have committed an assault on him, waved their finger in his face, and then generally done things like not accommodate his reasonable requests for things like accommodations for a disability. Does the complaint allege when requests for accommodation were made? And you just said disability. Is there a disability claim? We're not advancing a disability claim here. The focus of this is that 1981 had sufficiently broad edges on it, sufficiently encompassing to encompass the type of claim that Mr. Nadasan raised here, and that was one of his heritage and ethnicity. He compares himself against people of other races, heritages, and ethnicities. We have law from 1987 and this year in 2016 in our circuit that says that heritage and ethnicity is covered under 1981, and there are a number of examples within the complaint that I've detailed in my brief in the second section where he talks about his heritage and his ethnicity. He uses the word national origin frequently. He is from there. That is a fact. But what the judge missed was that, albeit in only one place did it say race, yet throughout the complaint it referred to the heritage and ethnicity of the gentleman. Does the complaint anywhere allege his racial or ethnic identity? Beyond Singaporean, no. I had one other question. The complaint alleges at paragraph 61G that the defendants failed to promulgate policies for employment at the hospital that would advance Singaporean nationals. There's no hospital in the case, I take it. No, no. There were some inartful errors of drafting by the counsel who drafted the complaint. And was Lee ever sought to amend the complaint to, for example, emphasize the ethnicity and the themes you're striking now? Was not sought at the lower level. I thought there was a mention in the brief that there was an error by the court. We've argued that the court should have given it. There was a request. There was no request made. There was not a request made. There was a challenge and a request for reconsideration. The court invited some argument on this. There was basic argument adduced by plaintiff's counsel at that level. But this is the kind of thing that screams, look, you say race. You say ethnicity. You say heritage. These are within 1981. There may be weaknesses in the complaint, as both Judge Chin and Your Honor pointed out. Judge Livington, maybe there are these things that are not in the complaint that should be. This screams, let's revise the complaint. But it was not requested. It was not sought. It was not sought. I have requested some two minutes. So I will have some myself. Thank you. Good morning. May it please the court. My name is Mark Batten. I represent the defendants in this case. Could you move the microphone up a little bit? Sure. Thank you. It seems that the parties are all in agreement, Your Honors, that 42 U.S.C. Section 1981 does not cover claims of national origin. This complaint could not be clearer that it asserts a claim of national origin discrimination. And the only we don't have to rely on the four times that the complaint mentions national origin, nor the eight times that the complaint uses the phrase Singapore national in describing what the discrimination was. We can look actually to, and maybe most relevantly to, the few paragraphs of the complaint that actually describe the facts of the alleged discrimination. And those are paragraphs 34 and 35, which counsel referred to a moment ago, in which one of his supervisors allegedly described the plaintiff as a fake Indian, that he didn't know how to pronounce Indian names and didn't like Indian food. And paragraph 35 actually says specifically that he was not able to pronounce Indian names, allegedly, because he was from Singapore. That's the allegation. So the only factual element that we have, as opposed to boilerplate or generic descriptions of the claim, is that his supervisor, Mr. Okamura, criticized him because he was from Singapore. That's as direct a national origin claim as one can imagine. And if that qualifies under Section 1981, it's difficult to imagine what a plaintiff would have to allege to plead himself out of court with a national origin claim as case after case has held. So the discussion about national origin throughout the complaint is absolutely conclusive. With respect to retaliation. There are cases where national origin is alleged, but in essence it's a proxy for race. That's right, Your Honor. They don't apply here because? Because there is no allegation that what was actually going on was criticism of the plaintiff on the basis of race or ethnic origin. And in fact. All the players were Asian. That's the issue, Your Honor, is that, and I'm speculating to some degree here, but it appears to have been a strategic decision that because the supervisors were Asian and Mr. Nadasan was Asian, he had to find something else to rely on, and that's why he constantly says Singapore, Singapore, Singapore. And there's no case that holds that being Singaporean is an ethnicity or a race, nor could there be. No more is there any basis to claim that when Mr. Okamura says you're not really an Indian, that that's somehow a racial or ethnic claim because, again, the comment is you're not from India. You are from Singapore. It's as clear a national origin claim as one could plead. The retaliation claim then similarly fails not only because it's alleged retaliation based on national origin, which is still outside 1981, but also because the complaint fails to allege any kind of chronology. We don't know when the defendants allegedly became aware of Mr. Nadasan's protected activity and so then took some negative action against him. As Judge Chin pointed out, the alleged adverse action here is very soft and general. All that's alleged is a denial of mentorship opportunities, development opportunities, whatever those mean. Mr. Nadasan was not terminated. He was not demoted. He was not suspended. And one case that I'd like to mention to your honors because it's not in either party's brief on this point is a case called Vega v. Hempstead Union Free School District. It's 801 F. 3rd, 72, 2015 Second Circuit case. It was not cited by the parties in the pleadings, but the reason I mention it is because on this retaliation point because the court says there that in order to plead a case of retaliation, and we are talking about in the complaint, the court says, this court said, that the complaint must plausibly plead a but-for causation connection. And you can read this complaint as thoroughly as you like, and you cannot find any allegation that pleads that even these sort of soft generic things that Mr. Nadasan says happened to him would not have happened to him but for his Singaporean national origin or for that matter his race or ethnicity. So the retaliation claims are just deficiently pled in all respects, and the Vega case reconfirms that. Finally, as has been noted, there was no request to leave to amend the complaint here, so there's no reason for the court here to be considering that issue. And on that point, I would only note again, although it is in the papers, that this was Mr. Nadasan's second bite at the apple. He had filed a complaint in the District of Connecticut alleging a Title VII claim. It was dismissed because his former counsel declined to participate in the discovery scheduling process. He then brought this second complaint, leaving out the Title VII claim, which by then was time-barred, and instead trying to bring this claim under 1981. So the district court was aware of that history when it decided this issue, and that may have, although there's no indication one way or the other, may have influenced the court in whether or not it decided sua sponte to suggest amendment. But in any case, Mr. Nadasan certainly did not request it. And then the final issue is about supplemental jurisdiction and whether the court should have decided the State law claims or just remanded them to State court. That is, of course, a discretionary choice that the judge made. There's no basis here for any abuse of discretion. The judge decided that the State law claim simply didn't state a claim as a matter of law, and most of that goes unchallenged by the appellant before this court. So for all those reasons, the judgment of the district court should be affirmed. Thank you. Thank you. Just two quick points that I want to make. And one is that while it may have a probative effect, whether or not the transgressors are of the same race as the person being discriminated against does not bar a finding. And that is enough to get us to where we need to go. There is no law that says you cannot be the same race and discriminate against someone. Additionally, there are persons of the white race, to quote the complaint, who were both named as defendants and who are used as comparators. The judge, as counsel has pointed out, knew that this action was originally commenced as a race discrimination case. It's brought under a statute that alleges race discrimination, and but for perhaps inartful drafting, it mentions national origin on a number of occasions. But being a national of Singapore is an accurate description. Reading the word racial, which exists in the complaint, and reading ethnicity and heritage in the complaint are sufficient to have this case fall under, regardless of whether it was well drafted or poorly drafted, to fall under 1981. Sufficient to give rise to the judge to say, we need to clean this complaint up. There is something here that you are alleging, and we need to clean the complaint up. Especially in light of the fact of issues with previous counsel, where one case had failed due to the failings of that prior counsel. That was clearly known to the judge. As far as what goes in here, as I said, Mr. Nadasan compared himself in terms of racial discrimination to white folks, to folks of other races, national origins, and ethnicities. The 2016 case that I've cited here in our circuit goes on to say that even an Italian American and an Irish American might have a race case underscoring Judge Chin's observation that national origin often is very obfuscated with a racial origin claim. And that's why 1981 has expanded to cover what it covers. Finally, once the judge was deprived of, deprives himself of jurisdiction of the federal claims, this circuit has been very, almost unanimous in addressing these issues. That the proper action should have been to then dismiss without prejudice and let the state court resolve those claims. The judge resolved claims of negligent hiring supervision of an assault claim under Connecticut state law and a Fair Employment Practices Act under the Connecticut Fair Employment Practices Act statute. I submit that that was error and the judge should be instructed to change that to a dismissal without prejudice, so that the state court can properly address those state claims. And bar any further questions, I thank you all very much. Excuse my error earlier, Judge. Thank you. Thank you both. Thank you both. That's the last case to be argued on our calendar, so I will ask the clerk to adjourn court. Clerk, I ask you to adjourn.